UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CHAMBERS OF<br>BRENDAN A. HURSON<br>UNITED STATES MAGISTRATE JUDGE | 101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-0782<br>MDD_BAHChambers@mdd.uscourts.gov |

May 5, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Jimmy O. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-1899-BAH

Dear Counsel:

On August 1, 2022, Plaintiff Jimmy O. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 8), the parties' dispositive filings[1] (ECFs 11 and 13), Defendant's supplemental brief addressing recent Fourth Circuit case law (ECF 16), and Plaintiff's reply to Defendant's supplemental brief (ECF 17). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will GRANT Defendant's motion and AFFIRM the Commissioner's decision. This letter explains why.

## I.  PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on December 8, 2014, alleging a disability onset of November 1, 2013. Tr. 207–08. Plaintiff's claim was denied initially and on reconsideration. Tr. 141–44, 153–54. On June 26, 2017, an Administrative Law Judge ("ALJ") held a hearing. Tr. 34–93. On November 15, 2017, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 13–33. The Appeals Council ("AC") denied Plaintiff's request for review. Tr. 1–6. Plaintiff then appealed to this Court, which remanded his case to the SSA on February 26, 2020. Tr. 524–47. A second hearing was held on December 18, 2020. Tr. 475–96. On May 11, 2021, the ALJ again determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 453–74. The AC declined to review the May 11, 2021,

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, Plaintiff filed a brief and Defendant filed a motion for summary judgment.

[2] 42 U.S.C. §§ 301 et seq.

decision, Tr. 440–47, so that decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of November 1, 2013, through his date last insured of December 31, 2014."  Tr. 459 (citation omitted).  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "post-traumatic stress disorder (PTSD); bipolar disorder; a learning disability; general anxiety disorder; and alcohol addiction disorder (in early remission)."  *Id.* (citation omitted).  The ALJ also determined that Plaintiff suffered from the non-severe impairments of acute inferior wall myocardial infarction, hypertension, hypercholesterolemia, and hypothyroidism.  Tr. 460.  At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id.*  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: retains the ability to concentrate, persist, and stay on pace with regard to performing simple 1-4 step, [sic] tasks where such work is performed in a low stress work environment, defined as requiring only occasional contact with co-workers, supervisors and with the general public.

Tr. 462.  In a footnote, the ALJ clarified his RFC determination:

> PACE: To be clear, the claimant has no pace limitation when performing this adopted residual functional capacity assessment.  Of course, another way of saying the same thing is, the claimant would have a pace limitation if doing more than the specifics of the adopted residual functional capacity.  E.g. If he were in an occupation which had tasks requiring performing more than four steps tasks [sic] in a work environment where he would have frequent contact with the general public.  Then, yes, he would have problems maintaining pace, but that kind of work

is precluded by the adopted residual functional capacity assessment.

*Id.* n.1. In another footnote, the ALJ added that "[t]he word, 'occasional' is defined as 'occurring from very little up to one-third of the time.' While 'frequent' is defined as 'occurring from one-third to two-thirds of the time.'" *Id.* n.2. The ALJ then determined that Plaintiff had no past relevant work but could perform other jobs that existed in significant numbers in the national economy. Tr. 467–68. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 468–69.

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises three arguments on appeal. First, Plaintiff argues that the ALJ incorrectly evaluated his RFC because he failed to discuss several state agency consultants' opinions which limited Plaintiff to "the performance of simple one and two step tasks and very short and simple instructions[.]" ECF 11, at 7. Second, Plaintiff argues that the ALJ failed to properly evaluate multiple source opinions pursuant to 20 C.F.R. § 404.1527(c). *Id.* at 9–13. Third, Plaintiff contends that the ALJ failed to explain how Plaintiff could maintain concentration, attention, and pace for 90 percent of the workday despite having found that Plaintiff had moderate limitations in this area of functioning. *Id.* at 13–15. Defendant counters that: (1) the ALJ provided "RFC limitations that accounted for [Plaintiff's] observed deficits, and he provided an extensive analysis to explain his conclusions"; (2) the ALJ properly evaluated medical source opinions which "did not go to the ultimate issue of disability"; and (3) the ALJ was not required to explain how he determined that Plaintiff would not be off-task for 10 percent of the workday. ECF 13-1, at 5–17.

The parties also take adverse positions on whether the Fourth Circuit's recent case of *Shelley C. v. Commissioner*, 61 F.4th 341 (4th Cir. 2023), warrants remand. Defendant contends that *Shelley C.* did not alter the standard for evaluating medical opinions under 20 C.F.R. § 404.1527(c) and that the ALJ properly complied with that standard. ECF 16, at 1–5. Plaintiff agrees that *Shelley C.* "did not change an [ALJ's] obligation to meaningfully consider the six 404.1527(c) factors in evaluating opinion evidence," but contends that the ALJ in this case failed to make these considerations. ECF 17, at 1–11.

      A.      <u>The ALJ Properly Determined Plaintiff's RFC.</u>

Plaintiff first argues that the ALJ "failed to properly evaluate pertinent evidence" in determining the RFC. ECF 11, at 6. Specifically, Plaintiff avers that while the state agency consultants who evaluated his claim found that he "can understand, retain, and follow simple job instructions (i.e. perform one and two step tasks[]), and 'is able to carry out very short and simple instructions,'" the ALJ erred by failing to either include these limitations in his RFC determination or explain his "implicit rejection of these limitations." *Id.* at 6–9 (italics and citations omitted). Plaintiff contends that this error is significant because all three of the occupations identified by the vocational expert and relied upon by the ALJ are "outside of the range of work which the State Agency physicians opined that" Plaintiff could perform. *Id.* at 8.

A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In determining the RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Moreover, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alteration in original) (citation omitted). Thus, an ALJ must both identify evidence that supports his conclusions and build an accurate and logical bridge from that evidence to his conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). However, the ALJ "need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment." *Jackson v. Comm'r, Soc. Sec.*, Civ. No. CCB-13-2086, 2014 WL 1669105, at *2 (D. Md. Apr. 24, 2014).

Here, while the ALJ could have been clearer in articulating his reasons for rejecting a limitation to one and two step tasks, a review of the record reveals that his explanation was adequate. Specifically, the ALJ gave "some weight to the State agency psychological consultants' opinions because they are supported by narrative explanations and based on a review of the evidence of record[.]" Tr. 465. But the ALJ also explicitly noted that "the medical evidence is consistent with somewhat different limitations than those found by the consultants." *Id.* (citing Tr. 97–108, 110–35). The ALJ justified these "different limitations" by stating that Plaintiff "obtained an MMSE score of 24/30 and his treating psychiatrist observed intact cognition and good attention and concentration." *Id.* The ALJ also explicitly reasoned that Plaintiff's "activities of daily living on an independent and sustainable basis despite his reports of amotivation" were indicative of his ability to "stay on pace with regard to performing simple 1-4 step tasks." *Id.* The ALJ observed that these activities include "caring for his personal needs and taking medication without reminders and operating a motor vehicle." *Id.* Accordingly, the ALJ declined to adopt the state agency consultants' proffered limitations wholesale in formulating the RFC. *Id.*

Because the ALJ's explanation for partially rejecting the state agency consultants' findings in formulating the RFC includes "evidence which a reasoning mind would accept as sufficient to support" the ALJ's conclusions, I do not find that the ALJ erred in assessing the RFC. *Laws*, 368 F.2d at 642.

B.     The ALJ Properly Evaluated the Opinion Evidence of Record.

For cases—such as this one—filed prior to March 27, 2017, ALJs weigh medical opinions in accordance with 20 C.F.R. § 404.1527(c). This regulatory framework requires an ALJ first to follow the "treating physician rule," which mandates that the medical opinion of a treating physician be entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "[T]he treating physician rule is a robust one: '[T]he opinion of a claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive contradictory evidence.'" *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 (4th Cir. 2020) (citing *Coffman*, 829 F.2d at 517). At the same time, the rule "is not absolute," and an ALJ may afford a treating physician's opinion less weight if there is more persuasive contradictory evidence in the record. *Hines v. Barnhart*, 453 F.3d 559, 563 n.2 (4th Cir. 2006) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

"Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the '[l]ength of the treatment relationship and the frequency of examination'; (2) the '[n]ature and extent of the treatment relationship'; (3) '[s]upportability,' i.e., the extent to which the treating physician 'presents relevant evidence to support [the] medical opinion'; (4) '[c]onsistency,' i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to 'issues related to his or her area of specialty'; and (6) any other factors raised by the parties 'which tend to support or contradict the medical opinion.'" *Dowling*, 986 F.3d at 384–85 (citations omitted). In *Shelley C.*, the Fourth Circuit emphasized that "[m]ere acknowledgement of the regulation's existence is insufficient and falls short of the ALJ's duties." 61 F.4th at 354. But the Fourth Circuit also made clear in *Shelley C.* that a reviewing court is permitted to infer that the ALJ considered the factors based on the opinion as a whole. *See, e.g.*, *id.* ("From this discussion, we can infer that the ALJ was aware of the examining relationship that existed between Shelley C. and Dr. Beale, which satisfies [the] first factor.").

Plaintiff argues that the ALJ failed to consider the factors listed at 20 C.F.R. § 404.1527(c) in assessing the opinions of "the State Agency physicians"; consultative psychological examiner Dr. Shakuntala Dhir; Madelyn Schrader, RN, LPC; Paul Short, Ph.D.; Dr. Ramesh K. Thapar; and Gerald D. Oster, Ph.D. ECF 11, at 11. While Plaintiff acknowledges that the ALJ considered the factors of supportability and consistency in assessing these opinions, he contends that the ALJ did not meaningfully consider the remaining factors listed at 20 C.F.R. § 404.1527(c), which renders his decision unreviewable. *Id.* at 11–13. I disagree. A careful review of the ALJ's decision reveals that he adequately considered each of the relevant factors under 20 C.F.R. § 404.1527(c) in assessing these opinions.

First, with regard to Dr. Dhir's opinion, the ALJ notes that Plaintiff received a "consultative psychiatric examination" from Dr. Dhir in April 2015, during which Dr. Dhir conducted a mental status examination. Tr. 464 (citing Tr. 393–97); *see also* Tr. 465 ("Dr. Dhir further observed that the claimant had stable emotional reactions and was able to relate to the examiner."). The ALJ

*Jimmy O. v. Kijakazi*
Civil No. 22-1899-BAH
May 5, 2023
Page 6

identifies Dr. Dhir as a "psychiatrist" who "did not perform a physical examination." Tr. 466.

Second, the ALJ "considered the June 2014 psychological assessment conducted by Madelyn Schrader, RN, LPC," which he noted was "conducted before the claimant began receiving treatment from Dr. Thapar and Dr. Oster[.]" Tr. 464 (citing Tr. 398–402). The ALJ noted that "Nurse Schrader found the claimant's performance during her assessment was suggestive of poor memory, focus, and concentration[.]" *Id.*

Third, the ALJ conducted a brief but adequate evaluation of the opinion of Dr. Short, who opined in May 2017 that Plaintiff's "executive dysfunction appears to limit his ability to function effectively in the workplace, particularly in conjunction with reading difficulties[.]" Tr. 466 (citing Tr. 438). The ALJ noted that "Dr. Short examined [Plaintiff] and rendered his opinion more than two years after the date last insured." *Id.*

Fourth, the ALJ discussed Plaintiff's "initial evaluation with Ramesh Thapar, M.D." in July 2014, as well as "several months of treatment from Dr. Thapar" which Plaintiff received thereafter. Tr. 464 (citing Tr. 426). The ALJ also noted that "Dr. Thapar's treatment records . . . demonstrate ongoing mental health symptoms despite medication and therapy[.]" *Id.*; *see also* Tr. 466 (noting that Dr. Thapar assessed Plaintiff in January and April of 2017).

Fifth, the ALJ noted that Plaintiff "received supportive psychotherapy services from Gerald Oster, Ph.D., from July 2014 through the date last insured." Tr. 464 (citing Tr. 403–04); *see also* Tr. 466 (noting that Dr. Oster "is a treating specialist in psychology" who opined that Plaintiff's "symptoms make it difficult, if not impossible, for sustained employment, even at part-time work productivity or at 80% of normal work productivity.") (citing Tr. 341–44, 403–04, 406, 439, 720–21).

Lastly, the ALJ adequately evaluated the opinions of two "State agency psychological consultants[.]" Tr. 465 (citing Tr. 97–108, 110–35).[3] While the ALJ does not name the consultants individually, his decision refers, through citations, to the narrative explanations and limitations provided by Drs. Madelyn Miranda-DeCollibus and Timothy Ostrich, who "evaluated [Plaintiff] at earlier levels of the administrative process." Tr. 460, 465. The ALJ's citations also make clear that these consultants evaluated Plaintiff just once. *See* Tr. 97–108 (Disability Determination Explanation of Dr. Ostrich), Tr. 110–22 (Disability Determination Explanation of Dr. Miranda-DeCollibus).

In sum, given the detail provided by the ALJ with respect to each of the foregoing opinions, the Court can infer that the ALJ adequately considered the length, nature, and extent of Plaintiff's treatment relationships with each source, as well as the frequency of examination by each source and each source's specialization, as required under 20 C.F.R. § 404.1527(c). Because Plaintiff points to no "other factors" raised by either party which might warrant consideration, the final factor under 20 C.F.R. § 404.1527(c) is also satisfied. Therefore, remand is not warranted based

---

[3] Exhibit 4A (Tr. 123–35) appears to be duplicative of Exhibit 3A (Tr. 110–22).

*Jimmy O. v. Kijakazi*
Civil No. 22-1899-BAH
May 5, 2023
Page 7

upon the ALJ's evaluation of these sources.

      C.     <u>The ALJ Was Not Required to Determine a Percentage of Time Off-Task.</u>

Plaintiff's final argument is that the ALJ "failed to set forth any explanation as to how he determined that an individual with moderate limitations in concentration, persistence, or pace would be capable of maintaining concentration, attention, and pace for 90 percent of the workday." ECF 11, at 13–14. Plaintiff's argument appears to conflate the vocational expert's testimony with the ALJ's decision. At the hearing, the vocational expert testified that being off-task for more than 10 percent of a workday would be work-preclusive. Tr. 494. But Plaintiff's argument is unavailing because the ALJ's decision does not include any finding that Plaintiff would be off task for a particular period of time. In fact, the ALJ explicitly noted that he "rejected" an RFC limitation reflecting that Plaintiff could be "[o]ff task for a certain amount of time per day/week/month," because such a determination was "not . . . appropriate on these facts." Tr. 463.

Moreover, the ALJ was not required to make a finding regarding time off-task. *See, e.g.*, *Kane v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-17-1252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018) ("[A]n ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the ability to sustain work over an eight-hour workday."). Accordingly, the ALJ's failure to explain a determination that he did not make does not warrant remand.

      V.     <u>**CONCLUSION**</u>

For the reasons set forth herein, Defendant's motion for summary judgment, ECF 13, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

                                    Sincerely,

                                    /s/

                                    Brendan A. Hurson
                                    United States Magistrate Judge